IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BARBARA JEAN SMITH, et al.                                          PLAINTIFFS

V.                                                          CASE NO. 4:05cv166

COLDWELL BANKER REAL ESTATE CORP., et al                     DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the motion of State Bank and Trust Company to compel arbitration and stay proceedings against plaintiffs Regina Burch, Bertha Bush, Juanita Coleman, Curtis Hilton, Kevin Hilton, Michael Jackson, Mattie Pruitt, Garseal Webb, Curly Lee West, and Bonnie Westbrook. State Bank and Trust has also filed a supplemental motion to compel arbitration and stay the proceedings against Mary Gunn. The plaintiffs have responded in opposition and this court is prepared to rule.

State Bank and Trust seeks arbitration against the aforementioned plaintiffs based on their execution of arbitration agreements with State Bank and asserts that the agreements are governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The plaintiffs assert that their claims should not be arbitrated because the arbitration agreements were procured to protect State Bank in the event that its involvement in Pruett's fraudulent conduct be discovered, that the fraudulent and illegal purpose in securing the plaintiffs' signature was concealed from the plaintiffs, that the plaintiffs were fraudulently induced to sign arbitration agreements without knowing their true purpose or scope, and that the agreements were procedurally and substantively unconscionable.

Plaintiffs Bertha Bush, Mary Gunn, Curtis Hilton, Kevin Hilton, Michael Jackson, Mattie Pruitt, Garseal Webb, and Bonnie Westbrook signed stand-alone arbitration agreements that stated:

> Any claim, dispute or controversy between Customer and Bank. . . . (whether in contract, tort, or otherwise, whether pre-existing, present or future, and including statutory, common law, intentional tort or equitable claims), arising from or relating to any matter including, but not limited to, the Deposit Account, any past or future interactions business or dealings between the parties. . . , shall be resolved upon the unilateral or joint election of Customer or Bank. . . , by binding arbitration, as hereinafter provided, pursuant to the Rules of the American Arbitration Association ("AAA") in effect at the time the Claim is asserted.

Plaintiffs Regina Burch, Juanita Coleman, and Curly Lee West signed stand-alone arbitration agreements with the following language:

> I agree I will first attempt to settle any controversy, claim or dispute ("Dispute ) concerning the depository account by good faith negotiation. If negotiation fails, then I agree to one day of mediation, by a mediator mutually agreed upon with Bank. If the Dispute is still not settled, then I agree to arbitrate the Dispute under the Arbitration provisions herein. . . I understand that I am agreeing to resolve any dispute concerning any depository account by mediation or binding arbitration rather than in court.

The plaintiffs claim that they were told they needed to have money in a bank account in order to purchase house, and the signing of the arbitration agreement was incidental to opening the account. They contend that the purpose for which the account was opened was illegal and that they were induced to sign the arbitration agreement based on false, misleading, or incomplete information.

## ANALYSIS

9 U.S.C. § 2 states that any ". . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid,

2

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The first question to address in adjudicating a motion to compel arbitration under the FAA is whether the parties agreed to arbitrate the dispute in question. *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id*. It is axiomatic that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Id*. (quoting *Hill v. GE Power Systems*, 282 F.3d 343, 347 (5th Cir. 2002)). Normally, doubts must be resolved in favor of arbitration, but the federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties or to the determination of who is bound by the arbitration agreement. *Id*.

A determination of whether there is a valid agreement to arbitrate is based on ordinary contract principles. *Id*. The crux of the plaintiffs argument is that there was fraud in the inducement of the signing of the arbitration agreement. If there is a claim of fraud in the inducement of an arbitration clause itself, which goes to the "making" of the agreement to arbitrate, a federal court may proceed to adjudicate it. *Shelley v. Coldwell Banker Real Estate Corp.*, 2006 WL 1313825, *2 (N.D. Miss. 2006). However, the statutory language of the FAA does not permit a federal court to consider claims of fraud in the inducement of the contract generally. *Id*. (*citing Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

A person is bound by the contents of a contract he signs, whether he reads it or not. *Washington Mutual Finance Group, LLC v. Bailey*, 364 f.3d 260, 262-63 (5th Cir. 2004). Contract principles require a meeting of the minds in order for an agreement to be valid and prohibits parties from engaging in fraud to induce signature. *Lang*, 321 F.3d at 538. The allegations of the plaintiffs do not demonstrate that there was fraud in the inducement of the arbitration agreement. There are only general assertions that the plaintiffs were unaware that they were relinquishing their right to sue in court, but no assertions that there were misrepresentations about what an arbitration agreement was or about the consequences of signing an arbitration agreement. While the parties may not have read the arbitration agreements, it does not appear that the plaintiffs unwittingly signed the documents since the arbitration agreements stood alone and were not buried in the language of a larger agreement. There is evidence that the bank accounts were opened in furtherance of a fraudulent scheme, but that does not mean, and this court cannot conclude, that there was fraud in the inducement of the signing of the arbitration agreements.

This court now addresses whether the dispute in question falls within the scope of the arbitration agreement. The plaintiffs direct this court's attention to the Mississippi Supreme Court's decision in *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So.2d 170 (Miss. 2007). In *Blakeney*, the plaintiff acknowledged that there was a valid arbitration agreement but maintained that his claims did not fall within the agreement. Blakeney, on behalf of Southern Industrial Contractors, purchased a vehicle from Rogers-Dabbs Chevrolet-Hummer and signed an arbitration agreement as part of the transaction. *Id*. at 171. The agreement stated that "all claims, demands, disputes or controversies of every kind or nature between them arising from,

concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle. . . or any other aspect of the vehicle and its sale, lease, or financing shall be, at the request of either party, settled by binding arbitration. . ." Blakeney filed suit against Rogers-Dabbs alleging that he never received title to the vehicle, that his personal and corporate identities were wrongfully appropriated as a result of his dealings with Rogers-Dabbs, and that his name was used in furtherance of an ongoing criminal enterprise. *Id*. His complaint contained five counts: 1) breach of warranty; 2) invasion of privacy; 3) negligent hiring and supervision; 4) civil fraud; and 5) intentional and negligent infliction of emotional distress and mental anguish. *Id*. at 172.

The Mississippi Supreme Court upheld the trial court's decision to grant a motion to compel arbitration regarding his breach of warranty claim, but to exclude from arbitration his invasion of privacy, negligent hiring and supervision, civil fraud, and intention and negligent infliction of emotional distress claims because they were beyond the scope of the arbitration agreement. *Id*. at 177-78. It maintained that while it was reasonable for Blakeney to agree to arbitrate claims that originated from or related to the sale of the vehicle, it was beyond reason for Blakeney to agree that the appropriation of his identity and the commission of civil fraud against him should also be encompassed in the arbitration agreement. The Court held:

> [W]e are of the firm opinion that today's decision in no way undermines what is now a long line of cases from this Court undergirding the federal policy favoring arbitration. However, today's record clearly reveals that the dispute before us was not within the scope of the arbitration agreement; therefore, we are constrained to find that when entering into the arbitration agreement, the parties did not agree to arbitrate this particular dispute.

*Id*. at 178.

This court takes particular note that the *Blakeney* holding in no way undermines the federal presumption in favor of arbitration. Footnote 9 of the *Blakeney* opinion reiterates this point:

> Our holding in today's case, in effect, upholds the arbitration agreement as a valid agreement, but determines that Blakeney's claims are outside the scope of the arbitration agreement. Thus, we are finding that Blakeney is not obligated to arbitrate Counts II, III, IV or V . . . By no means are we invalidating the arbitration agreement on the account of Blakeney asserting fraud; we are excluding from arbitration the claims which Blakeney asserts are outside the scope of this particular arbitration agreement . . .

The instant action presents a similar factual scenario. Plaintiffs Regina Burch, Juanita Coleman, and Curly Lee West signed valid arbitration agreements. However, the language of the agreements signed by the aforementioned plaintiffs is fairly narrow in that it limits arbitrable claims to those "concerning the depository account." As in *Blakeney*, this court does not find the arbitration agreements unenforceable, but does find that the claims of mortgage fraud are outside the scope of the arbitration agreement. Following the logic of *Blakeney*, it appears beyond reason under the language of the arbitration agreements that the plaintiffs expect their claims of mortgage fraud, which are akin to civil fraud, to be encompassed as an arbitrable claim. Accordingly, the motion to compel arbitration as to Regina Burch, Juanita Coleman, and Curly Lee West must be denied. This court is not unmindful of a differing opinion rendered by a fellow judge in this district on a nearly identical issue, and suspects this question may need to be ultimately resolved by the Fifth Circuit.

The language in the arbitration agreement signed by Bertha Bush, Mary Gunn, Curtis Hilton, Kevin Hilton, Michael Jackson, Mattie Pruitt, Garseal Webb, and Bonnie Westbrook is much broader. It encompasses *any* claim "arising from or relating to any matter including, but

6

not limited to, the deposit account," . . . and "any past or future interactions business or dealings between the parties . . . ." It is the lack of limiting language in this arbitration agreement that causes this court to conclude that the broad language of this agreement encompasses the plaintiffs claims of mortgage fraud against State Bank. The motion to compel arbitration as to Bertha Bush, Mary Gunn, Curtis Hilton, Kevin Hilton, Michael Jackson, Mattie Pruitt, Garseal Webb, and Bonnie Westbrook is granted.

This the 14th day of September, 2007.

**/s/ Michael P. Mills**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**